RICE (CARR v.). See Cases Nos. 2,439 and 2,440.

RICE (CHOTEAU v.). See Case No. 2,694.

---

## Case No. 11,752.

### RICE v. HEALD.

[13 Pac. Law Rep. 33.]

Circuit Court, D. California. Jan. 13. 1877.[1]

PATENTS—INVENTION—ANTICIPATION—INFRINGEMENT—DAMAGES—STEAM BOILER.

[1. A patent is itself prima facie evidence that the patentee was the original and first inventor, and that the invention is useful.]

[2. A mere carrying forward, or new or more extended application, by one person of the original thought of another,—a change only in form, proportions, or degree, doing substantially the same thing in the same way by substantially the same means,—is not patentable invention, though a better result be accomplished.]

[3. A patent which introduces into an existing machine a new element not used before, which produces a new and useful result, is not anticipated by such prior machine.]

[4. No machine can be an anticipation which could not be made to produce, without substantial alteration of its construction, the same results as those of the patented machine.]

[Cited in Gottfried v. Phillip Best Brewing Co., Case No. 5,633.]

[5. Infringement involves substantial identity. An infringing machine is a copy of the thing described in the specifications, either without variations, or with only such variations of form, proportion, etc., as are consistent with its being in substance the same thing. Mere colorable alterations, or the use of a mechanical equivalent of some element of the patented machine, does not avoid infringement.]

[6. Damages for infringement should be measured by the profits on machines which the patentee could have sold, had not the infringing machine come into the market, if the marketable quality depends entirely upon the patented invention; otherwise, the damages are to be measured by whatever profits the patentee could have made from the sale of his invention.]

[7. The Rice patent, for an improvement in steam boilers used for threshing machines, whereby straw may be used as fuel, construed in a charge to the jury.]

[This was an action at law by Harvey W. Rice against John L. Heald, to recover dam-

---

1 [Reversed in 104 U. S. 737.]

ages for the infringement of a patent relating to steam boilers for threshing machines.]

SAWYER, Circuit Judge (orally charging jury). Gentlemen of the jury, it now remains for the court to instruct you as to the law applicable to this case, and then it will be your duty to determine the facts. This is an action, as you have already learned, to recover damages for the infringement of a patent issued to Harvey W. Rice for an improvement in a class of steam boilers, more particularly those that are used for threshing engines in the field. You will bear in mind that there has been a good deal said about another patent to one Morey, in the course of this trial and in the argument. It appears that Rice also owns the Morey patent. but the action is not brought upon the Morey patent. It is brought simply upon the Rice patent. So that you have nothing to do with any infringement of the Morey patent. The question for you to determine is, whether there is any infringement of the Rice patent, and on the question of infringement your attention will be confined to the Rice patent. The plaintiff cannot recover in this action for any infringement of the Morey patent, although Rice may own the Morey patent. The rights of the parties here must depend upon the Rice patent alone.

The statute provides that any person who has invented or discovered any new or useful machine, manufacture, or composition of matter, or any new and useful improvement thereof, not known or used by others in this country, and not patented or described in any printed publication in this or any other country, shall be entitled to a patent. That embraces a patent for composition of matter or an improvement in a machine. It is claimed in this instance that there is an improvement in a machine. You will observe that, in order that a party may be entitled to a patent, the thing or the machine that he makes must be new. He must have invented it. He must not only have invented it, but he must have been the first inventor. Mr. Rice claims that he has invented this improvement upon the machine. He also claims that he is the first inventor. If it has been invented and in use in this country before, or has been invented in a foreign country, and a patent issued for it in a foreign country, and there has been a description of the machine in a foreign country in any publication, that is sufficient to defeat the patent.

The first question, you perceive, is, is this new? And I will say in connection with this matter, gentlemen, that there may be a patent for a new machine entirely composed of original elements,—original parts,—or there may be a patent of a combination of several distinct parts, neither one of which parts is new. A party may take two, three, four, five, or any other number of old things that are well known and are in use, and put them together, and make some new combination, and if that new combination produces a new and useful result, he will be entitled to a patent for the combination; and any one who uses that combination would be an infringer upon his rights. The patent in this case, then, is for a combination, because all of the elements are old, and it is the combination only that is new. The combination must be such as to produce a new and a useful result; that is to say, a result which none of them would produce in their several parts taken by themselves. Is this patent new, and is the plaintiff the original inventor of it?

Upon the question as to whether it is new, and whether he is the original inventor, the patent itself, having been issued to him upon an examination, is prima facie evidence, and is sufficient to make out a case upon those points, provided there is no other testimony in the case. It makes a case which devolves the duty upon the other party to show that it has been anticipated by some other machine or some other invention. There is testimony here, in addition to the patent, tending to show that Rice was the original inventor, and also that it is new. But there is testimony, upon the other hand, which is claimed upon the part of the defense to overthrow this presumption. Defendant claims to have established by testimony that this has been anticipated by other machines, and the question for you to determine is whether the testimony is sufficient, in your minds, to overthrow the prima facie case made by the patent, and to show to your satisfaction that the invention has been anticipated. The first patent which is introduced as an anticipation, and one upon which the defendant seems most strenuously to rely, is the Morey patent. In connection with that is the Garratt patent, a patent which is shown to you in a publication made in England; but the Morey patent is the one upon which the most strenuous efforts have been made, and upon which the greatest stress has been laid in this trial. Now, the question to determine is, is the Rice patent new or not? or is it but an adaptation and a carrying out of Morey's idea, without the addition of any new conception?

I am asked, gentlemen, in this connection, to instruct you, in the language of a passage taken from the decision of the supreme court, that "a mere carrying forward, or new or more extended application, by one patentee of the original thought of another,—a change only in form, proportions, or degree, doing substantially the same thing in the same way by substantially the same means,—is not such an invention as would sustain a patent, even though the result may be better"; and if it turns out that this is all that Rice's patent did with Morey's invention, then the defendant is entitled to a verdict. That, gentlemen, is true. I give you that instruction in the language of the supreme court. But the same court, in the same case, in imme-

diate connection with this language, uses also the following language: "But a new idea may be ingrafted upon an old invention, and be distinct from the conception which preceded it, and be an improvement. In such case it is patentable." Now, is this case of the Rice patent a carrying forward merely of the old idea, or is there an ingrafting of a new and distinct idea upon Morey's conception?

As to what these two patents cover is a matter of construction for the court. Morey's patent makes no reference to a steam boiler, otherwise than his invention it to be attached to a steam boiler, and he refers to it as for use with a threshing machine. His combination is simply the attachment connected with a furnace, as described in his patent, and there is nothing in his own testimony that indicates that his conception extended beyond that idea. His idea, as gathered from his description and the claim in the patent, is that he made this box or feeding attachment, and attached it to the door,—to the furnace door of an engine, and his conception was an arrangement for feeding in the straw and for shutting off the draught so as to regulate, control, and modify the combustion in the furnace where the heat is generated. It only extended to that idea. Nothing else can be gathered from the language in his description, in his specifications, or claim. A boiler, of course, must be used, and he only refers to that as an instrument for generating steam from the effects of the heat. An engine also must be used in connection with it. He makes no other reference to the engine than as being propelled by the motive power that is generated. A threshing machine, also, must be used, but none of those enter into his conception; that is to say, neither the boiler, the engine, nor the threshing machine form any part of his conception as to what regulated, controlled, or modified the combustion of the fuel for the generation of heat. There is nothing to indicate that he supposed that any boiler, or any class or kind of boilers, had any influence whatever upon the regulation or modification and controlling of the combustion, so that the straw should not burn too rapidly, or so that it should not be consumed in such a way as to lose a part of its force in the consumption. The only thing that his idea extends to, then, is the combination of this tube, which, it seems from the evidence, served—Firstly, as a feeder; secondly, to shut off the draught, so as to prevent the too rapid combustion; and, thirdly, to prevent the straw from falling below and igniting in the other draught below. His conception does not embrace a steam boiler, or any class of steam boilers, as co-operating with his other devices to modify, to regulate, or control the consumption of fuel; but it is limited to those two devices for that purpose of modification, regulation, and controlling the consumption. The boiler is simply referred to as an instrument for generating steam and furnishing the motive power. It is not one of the elements, therefore, that affects, in his estimation, the regulation or modification which he sought to produce, and is not, therefore, embraced in his combination, and is not a part of his idea. It is only a part of the general machine. His claim was limited to the subcombination. A patentee may claim the entire combination of a half dozen different elements, and he may, in connection with that, make several subcombinations,—two or three, or more of them,—and claim the combination of any two of them which produces a result, or any three of them which produces a result, or any four of them; but the only thing he, in this instance, claimed as a combination are those elements which, in his estimation, co-operate together, and tend to produce the result which he seeks to produce. Now, that is the construction, plainly, of Mr. Morey's patent; and in his testimony there is nothing to indicate that he ever conceived the further idea that any particular class or kind of boiler would co-operate with his other devices to produce that particular result, but he intended to produce his result by simply controlling, regulating, or modifying the consumption of straw by those means which he indicates, and by those means alone.

Now, if Mr. Rice's patent only carries out that idea, then it is only carrying forward his idea, in the sense of the language of the instruction which I gave you. But, did he add something to that idea? Was there an additional conception by Mr. Rice, which he has covered by his patent? Is there a new element added? Mr. Rice, by the specifications of his patent, shows what he claims that he has discovered. He says: "My experiments have developed the fact that, by attaching a tube or box door to the furnaces of that class of boilers known as return-flue boilers, in which the chimney or stack is constructed directly above the furnace, and the heat and products of combustion from the furnace are carried along under the boiler and then returned to the stack through the tubes or flues leading through the length of the boiler, the combustion will be so complete that no sparks and very little smoke will escape from the chimney, and the straw will burn freely, giving out a high degree of heat, without danger of choking the grate bars. By this construction all the fuel is thoroughly ignited in its passage through the large flue, which has plenty of air admitted for that purpose. The heat and flame will be concentrated in returning through the small flues, and combustion will be so complete that no sparks and very little smoke will escape from the chimney, and this latter will not even need a bonnet." He also says, among other things: "To the door of the furnace, C, I attach a straw-feeding tube." Then he goes on to say what constituted his discovery and produced these desired results: "In order to remedy these

faults, and properly consume all of the smoke and sparks, I perforated my tubes sheet, B, B" (this is it; the heading here in the inside), "so as to admit one large flue, C, near the bottom, which receives the fuel upon a grate, D, and acts at the same time as a tube and fire box. To the door of the furnace, C, I attach a straw feeding tube, E, through which the straw or other light fuel is fed to the furnace. This tube can be constructed in the manner described by David Morey in his patents, dated February 11, 1873, and May 20, 1873, for straw-feeding attachments for furnaces, or in some suitable manner for feeding the straw without admitting a draft." Now, he claims, "by this construction I am able to make," not an attachment combined with a furnace door, merely, but, "I am enabled to make a boiler and furnace in which straw can be used as a fuel with perfect safety, and in which repairs can be easily effected." Then his claim is: "The boiler, A, having the furnace, C, grate, D, return flues or tubes, E, E, and stack or chimney, B, arranged as described, in combination with the straw-feeding furnace-door attachment, substantially as and for the purpose described."

Now, his conception, you will see, adds something else to the combination of the feeding apparatus and the furnace door, as affecting the efficiency of the heat produced by the combustion,—something more than is accomplished by the mere consumption of the straw as affected by the combination of the door of the furnace with the feeding attachment. He takes in the flues. The heat from the straw being all in the flame,—there being no heat in the coals or embers,—the heat in the flames passing through the flues concentrated in the small tubes, C, C, thereby giving it a larger space and heating surface; and there being heat enough to last while carrying it along, it makes it more effective, according to his ideas, and it consumes so thoroughly as to prevent the escape of sparks, and makes it safer. So that his conception adds another conception to that of Morey; that is to say, the flues as affecting the operation of the combustion, rendering the heat more effective which is generated by that combustion. And he claims that it produces two results: Firstly, you get the full benefit of the heat, according to his idea; and also, you make it a safer machine, both of which must be useful, if it produces those results. Now, that is his conception. Flues enter into the combination as another element, another conception added to the two elements which were united by Morey,—that is to say, the three elements co-operating together produce the result,—whereas, in Morey's, according to his claim, only two of them co-operated to produce the result. The use of the boiler in Morey's machine was for another purpose,—the heating of water and the generation of steam.

I therefore instruct you, gentlemen, that, as described in their patents, the claim of Rice is broader than Morey's, and introduces another element into the claim,—adds a new idea, which Morey claims to have discovered. Now, that is a matter of construction. That is a matter of law, upon the construction of the language of the patents themselves, as to what their respective claims cover. Now, if that is Rice's combination, if he is the first to discover it, if it was never discovered before, and it produces a new and useful result, he is entitled to a patent for it, and I instruct you that Morey's patent, according to the claim, if the claim is true on both sides, is not an anticipation of Rice's; that Morey's patent, not being in anticipation of Rice's, the other patent, the English patent of Garratt, is not an anticipation of Rice's, for that, with respect to this point, is substantially the same as Morey's. Rice's idea is not carried out and introduced into that patent or that description,—this additional idea which Rice claims he has discovered and introduced in his claim for a patent. Neither of those, therefore, properly construed, is an anticipation of Rice. If Rice, therefore, is the first one to discover this effect, and this effect is produced by his combination, and is useful, he is entitled to a patent for it.

There is another machine upon which some stress has been laid, and that is the Mare Island machine. Gentlemen, you have heard the testimony in relation to that, and it is a question of fact, for you to determine, whether that machine embraces all the elements that are contained in the Rice machine; and if it would perform the same service in the same manner, in substantially the same way, —if it has substantially the same combination in all particulars,—why, then, it is an anticipation of Rice's machine. I believe there is no testimony introduced to show that it had been tried, to see whether it would work with straw or not. It was used at Mare Island for other purposes. The testimony was mostly directed to the arrangement in the door. You heard the testimony, gentlemen, and it is for you to determine whether or not that machine is the same thing,—whether it embraces all the elements of the Rice combination, and produces the same result in the same manner, or not. I shall not attempt to analyze particularly, because the counsel on both sides have called your attention to the evidence on that point. If this is the same thing,—if it does the same thing in the same way, in substantially the same way,—why, then, it is an anticipation of this machine, otherwise, it is not. But it must embrace all the elements that enter into Rice's combination, and produce the same results in the same way, in order to make it the same thing.

It is no new invention to use an old machine for a new purpose. The inventor of a machine is entitled to all the uses to which it can be put, no matter whether he had conceived the idea of the use or not; and if the machine

is public property, then the public has the same rights to such machine that the patentee has to his patented machine, and may use it, not only for purposes now known, but also for all purposes for which it may hereafter turn out to be useful. But, gentlemen, it must be the entire combination to be the same machine. It must contain the whole combination, and not omit any of the elements of the combination. In connection with that, I will say, also, gentlemen, that no machine can be an anticipation of the plaintiff's patent which could not be made to produce, without altering its construction substantially, the same results as were produced by the machine described in the plaintiff's patent. Any prior machine which would not produce substantially the same results as the one patented to the plaintiff could not be substantially the same machine, no matter how nearly the prior machine might resemble the plaintiff's in its construction. Gentlemen, you will determine the question, whether this is new or not, remembering that the patent makes out a prima facie case, and it devolves upon the defendant to show by satisfactory evidence that it has been anticipated by some other machine. I believe that these are the only machines presented that there is any substantial claim of being anticipations,—all that I recollect now. If there are others, you will recollect them, and apply the same principles to them that are applied to these.

The next question is, is it useful? It must be new and useful. If you find it is not new, that ends the case. But if you find it is new, then is it useful? Upon that subject, also, the patent is prima facie evidence that it is useful; and the fact, if it be a fact, that it has gone into general use is also evidence of usefulness. The very fact that these defendants are here contesting it is evidence of its usefulness. It is not at all likely that it will go largely into use, and that these defendants would be here contesting it, if it is not useful. If there are any machines that are equally useful, they can use them without infringing upon this patent. All those facts go to the question of usefulness. Now, the testimony indicates to you, gentlemen, that, until three years past, this machine has never been used with straw. There is evidence here to show that many attempts had been made to make a machine that would successfully burn straw. The evidence tended to show that, as soon as this turned out to be a success, it went into immediate use and supplanted,—nearly supplanted,—all other machines within the state, or is rapidly supplanting them. Now, all that is evidence of usefulness. So, also, gentlemen, the fact that there was a want for this machine, and that there was an effort to discover a machine that would practically consume straw for the generation of steam, and that none was ever successfully used for the consumption of straw until these two engines of Morey and Rice came into the field, is very strong evidence

that it is new also; because if the thing had before existed, and it had been known, there being a want of it, it would probably have been used, and if, under the circumstances named, no such machine existed or was brought into use for this purpose, that would be indicative that it was not known that there was any such machine. This, then, is a strong and persuasive evidence of the newness as well as of the usefulness of the machine,—that, in connection with the fact that it went into immediate use, if it did go into immediate use. But how much weight is to be given to it is a question for your consideration entirely. Now, gentlemen, upon this testimony you will determine whether this combination is new and useful. If it is new and useful, and Rice was the first inventor, why, then, he has a valid patent, and no person has a right to infringe it. If these defendants have infringed it, then they are bound to respond to him in damages for that infringement.

You will pass upon those questions, then, gentlemen. If you find that this was new and useful, the next question is, has there been an infringement of the patent? I had occasion before, in another case, to define infringement of a patent, and as the counsel for the defendants have accepted that definition having read from the opinion the definition which was given, and it has not been controverted by the other party, I cannot do better than give the definition of infringement in the language there used. It seems to be conceded to be correct upon both sides. "An infringement takes place whenever a party avails himself of the invention of the patentee without such variation as will constitute a new discovery. An infringement involves substantial identity. It is a copy of the thing described in the specifications of the patentee, either without variations or with only such variations as are consistent with its being, in substance, the same thing. No certain, definite rule can be stated by which to determine unerringly, in every case, what will amount to substantial identity. The jury, guided by general principles, must determine each case upon its own circumstances. If, however, the invention of the patentee be a machine, or an improvement on a machine, it will be infringed by a machine which incorporates in its structure and operation the substance of the invention,—that is, by an arrangement of its mechanisms which performs the same service or produces the same effect in the same, or substantially the same, way. The question is whether the given effect is produced substantially by the same mode of operation and the same combination of powers and devices in both machines. Mere colorable or evasive differences cannot defeat the right of the original inventor. The inquiry, therefore, should be whether the defendants' device is, in substance and effect, a colorable evasion of the plaintiff's contrivance, or

whether it is really a new and substantially different thing. If the defendants have taken the same general plan, and applied it to the same purpose, and produced the same effect in substantially the same mode, although they have varied the form of construction merely, it will still be substantially, in contemplation of the patent law, the same thing; otherwise, it will not. Whether or not the machine is an infringement of another, therefore, does not necessarily depend upon whether the mechanical constructions are different, but the question is whether, whatever be the mechanical construction, the latter machine contains the means or combination found in the previous machine,—whether, taking the structure as you find it, you see the new idea completely embodied in it. In this case, the plaintiff's patent is substantially for a combination of parts before separately known and used in machinery, and since this is so it is no infringement to use any of the parts where the combination itself is not used, or any combination of some of its parts with another substantially different from a third element or part described in the specifications of plaintiff's patent. But if the defendants here have only varied their combination by employing well-known mechanical substitutes for some one or more material elements or parts of the plaintiff's combination, then there is an infringement; for a mere known mechanical substitute for a thing, for the purpose of determining the question in issue, must be regarded as the thing itself."

Now, gentlemen, is there an infringement? As I instructed you before, the combination in the plaintiff's patent consists of the boiler, A, having the "furnace, C, grate, I" (you find that in both machines), "return flues, E, E," (you find them in both machines), "stack or chimney, B" (that is in this device, and here—showing with a model—it is in both machines), "arranged as described, in combination with the straw-feeding furnace-door attachment, substantially as and for the purpose described." Now, the stand is made, upon the part of the defendants here, on the straw-feeding furnace attachment, because their machine, in order to be an infringement, must contain all of the elements that go to make up their combination, and if the straw-feeding furnace attachment is omitted, then, they have not used his combination,—they have used only a part of his combination, and a part of his combination has not been patented. It is the entire combination that has been patented.

The whole question comes back to this: The only stand, and the only claim, I believe, on this branch of the case, is that the defendants have not used the straw-feeding attachment of the plaintiff. On the other hand, the plaintiff insists that they used simply a mechanical substitute for that, and

that, therefore, it must be considered as though it were the precise thing, and in the precise form in which they used it. And the question for you to determine is, then, on that point, if you find the others are all used, whether they have used that straw-feeding attachment or a mechanical substitute for it; because, if they have used a mechanical substitute for it, it is regarded as the attachment itself,—that is to say, have they used something that performs the same service in substantially the same way, a known mechanical substitute which performs substantially the same service in the same way? "Where, in mechanics, one device does a particular thing, or accomplishes a particular result, of another device known and used in mechanics, which skillful and experienced workmen know will produce the same result, and do the same particular thing, it is a known mechanical substitute for the first device mentioned for doing that thing, or accomplishing that result, although the first device may never have been detached from its work, and the second one put into its place. It is sufficient to constitute mechanical substitutes that, when a skillful mechanic sees one device doing a particular thing, he knows the other device, whose uses he is acquainted with, will do the same thing."

Gentlemen, it often happens that, in the evasion of patents, a mechanical substitute—because they are sometimes very different in form and construction—is put in place of the other element, with a view to evasion. Whenever that takes place, there is still an infringement, because the mechanical substitute is regarded for this purpose the same as the original thing. The question for you to determine is whether there was any feeding attachment here, or anything that was a known substitute for it at the time that this invention was made, and which a person skilled in the business, and knowing the uses to which the feeding attachment was adapted, could substitute without the process of invention, merely from his skill, and from his own knowledge of the other thing,—whether he could take it out and put the other in its place without experiment, or without exercising the faculty of invention. If it is such that a person skilled in the business, and knowing the object for which the element in the combination is used, could substitute the other for it, then it is a mechanical substitute, and is the same as the thing itself. Mr. Rice does not limit his feeding device to the box, or either of the boxes, which Mr. Morey has invented, neither in the original patent nor in the reissued patent. He says: "To the door of the furnace, C, I attach a straw-feeding tube, E, through which the straw or other light fuel is fed to the furnaces. This tube can be constructed in the manner described by David Morey in his patents, dated February 11, 1873, and May 25, 1873, for steam-feeding attachments for furnaces, or in

some other suitable manner for feeding the straw without admitting a draft of air." You will bear in mind, gentlemen, that there are two patents of Morey, having different combinations. You can have the patents before you so you can examine them when you retire. (Showing them.) This is one, and this is the other. This tube in Rice's does not necessarily include these doors. It may be such as either of those, or it may be something else,—any suitable tube for the feeding of the straw without admitting a draft of air. I will read it again. (Reads.) Now, the object, as I said before, indicated by the testimony seems to be what I will now state. If there is any other use for it, you have heard the testimony, and we will see what it is. But I will call your attention to these as some of the uses, at least, indicated: First, as an aperture and guide to conduct the straw into the furnace; secondly, to cut off the draught of air. The draught. it seems, may be cut off by the door, or by the stuffing in of straw itself, which may be left in the orifice until the next forkful comes; but there must be some sort of an attachment that serves these purposes,—something in the nature of that which he describes here, although it may not be like Morey's, or either of them. It must be something of that kind, which serves that purpose,—to serve as a conduit; also, to stop off the draught until the next forkful comes, thereby regulating, modifying, and controlling the consumption of the straw. And the other indication is that it prevents the straw from falling down and taking fire from the draft below. Now, then, there must be something that answers that purpose in the infringing machine, in order to make it embrace the entire combination of Rice. Anything that was before known, which a mechanic by his skill, seeing what is to be done, could substitute, without exercising the faculty of invention and without experimenting upon it, and make it answer the same purpose as the device in question, would be a mechanical substitute.

It is contended upon the part of the plaintiff that these devices which are used by the defendants are such substitutes (illustrating); that the door falling here serves as a rest, and serves as a guide; that the straw may close the orifice as it enters; and that any man could make that arrangement and substitute it, without exercising the faculty of invention. Now, whether that is so or not, gentlemen, is a question of fact for you to determine, and you must determine it from the evidence. In the case of one of the engines, the testimony is conflicting as to what the arrangement was. Some of the witnesses said there was something in the nature of a trough,—that is, a bottom piece, and a side piece on each side,—which would be like a spout or a tube. Other witnesses say there was simply the bottom piece, and the testimony is that that answered for a rest. As the testimony is conflicting, you must take it as you find it. Some say it serves as a guide, and that the straw closes the orifice, and that it also prevents the straw from falling down, in the same manner that the tube would do. Now, if that is an arrangement which answers the same purpose, and performs the same function, in substance (not exactly, but substantially), in the same manner, involving substantially the same principle, and performs the same office, —if it was a known implement, which any one could substitute for the other,—if that be so, and it performs those functions in substantially the same way, substantially the same manner, then it is a mechanical substitute for the attachment, the feeding box or tube in Rice's machine, and must be regarded as the same thing; otherwise, it is not. If it is not such a mechanical substitute, then there is wanting one of the elements in the combination; and it is for you to determine, from all the facts in the case, whether that is a mechanical substitute or not, and whether the machine as a whole contains all of the elements which enter into Rice's combination, so as to make it substantially the same thing, and doing the same work in substantially the same way. If you find that to be so, why, then, there is an infringement. Otherwise, there is not an infringement. Gentlemen, this is a question of fact, wholly for you. I have only indicated the points to which your attention is called; but what weight you give to the testimony, what importance you will attach to it, you are yourselves to determine, not I.

If you find there is an infringement, the next question is one of damages. If you find there has been an infringement, you will find the amount of damages the plaintiff has sustained by reason of this infringement. The rule of damages, gentlemen, should be the exact amount of damages actually sustained; that is to say, should be compensation, not punishment. The plaintiff should be fully compensated for the loss that he has sustained by reason of the infringement of his patent. Two elements of damage have been given in testimony here. Sometimes the royalty may afford a proper measure of damages. At other times it does not. In some cases the patentee prefers to receive his compensation entirely by royalty, making no machines himself; not to sell the patent, but simply to allow the public to use it by paying him a royalty of so much on each machine. When that is done, the royalty is the fair compensation, because it is the compensation which he fixes himself for the machine. In another instance a party may choose to sell his invention, and in another instance he may choose to manufacture his machine and supply the market himself. Now, the patent is his. The property is his, and he is entitled to adopt either of those modes that suits his judgment or convenience. There is evi-

dence here, gentlemen, that the party fixed a royalty for the territory east of the Sierra Nevadas or the Rocky Mountains, I have forgotten which,—no matter which,—and that he authorized the sale of machines there for a fixed royalty, but that did not include the Pacific coast; that he preferred here to supply the market itself, and was manufacturing and selling the machine himself. Now, he had a right to do that, if he chose to do it; and whatever machines he could have sold here at his price, he was entitled to sell. If his invention was the thing which made his machine marketable, and the sale of it depended entirely and wholly upon his invention, then he is entitled to the profits on the machines that he could have sold, had not this interfering machine come into the market. Otherwise, he is entitled to whatever profits he could make from the sale of his invention. It is for you to ascertain how many machines were sold by the defendant in this case, and whether, in all probability, the plaintiff could have sold those machines, had the defendant not made and sold them, and what the profit is upon them that is due to his improvement. Whatever that is, he is entitled to recover; but you are not to include any machines which were made prior to the 4th of May, 1875, nor subsequent to January 12, 1876.

You have heard plaintiff's counsel say that the most important question to him is the establishment of his right. That is more important than are damages. Still, plaintiff asks damages, and is entitled to such damages as you think he should receive. But he has said in the argument here that the other is the more important question, and that he would be satisfied with less damages than he has claimed, if you cannot agree on the greater sum, in case you find his right has been violated.

If you find a verdict for the plaintiff, your verdict will be: "We, the jury, find for the plaintiff, and assess his damages" at so much, whatever you find those damages to be. If you find damages, they should be such as will compensate him for loss by reason of the making and selling of the machines which are shown to you to have been made and sold by the defendant. Then your first inquiry, gentlemen, is, is this new? Then, is it useful? And, has it been infringed? And, if you find all of those for the plaintiff, the next question is, what is the amount of the damages he has sustained?

I believe I have covered all the points that are necessary to enable you to come to a decision in this case.

[The trial resulted in a verdict and judgment for plaintiff, which was reversed by the supreme court. 104 U. S. 737.]